# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK DALE EARVIN, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1476 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this habeas petition challenging his convictions and sixteen-year sentences for indecency with a child by contact and sexual assault of a child. Respondent filed a motion for summary judgment (Docket Entry No. 21), to which petitioner filed a response (Docket Entry No. 29).

Having considered the motion, the response, the record, the pleadings, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons explained below.

### *Background and Claims*

Petitioner pleaded guilty to indecency with a child by contact and sexual assault of a child on August 13, 2014, and was sentenced to two concurrent sixteen-year sentences. The convictions were affirmed on appeal, *Earvin v. State*, Nos. 14-14-000702-CR, 14-14-000703-CR, 2015 WL 4104701 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review on November 18,

2015. Petitioner's application for state habeas relief, filed with the trial court on January 20, 2017, was denied by the Texas Court of Criminal Appeals on April 11, 2018.

Petitioner filed the pending federal habeas proceeding on May 2, 2018, raising the following grounds for relief:

1. Trial counsel was ineffective in advising him to plead guilty and stating that the prosecution could still use some of the evidence suppressed by the trial court.

2. The State violated his Fourth Amendment rights by detaining him and searching his car and phone without probable cause.

Respondent contends that these claims are without merit and should be summarily dismissed.

### *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's convictions.

On August 8, 2012, Department of Public Safety Trooper Eric Pak was working stationary patrol in his beat on the eastbound lanes of Interstate 10 between mile markers 818 and 819. While watching eastbound traffic in his rearview mirror, Pak witnessed Earvin move from the center lane to the left lane. A white truck was slightly ahead of Earvin in the center lane; however, Earvin continued driving in the left lane at a constant speed without passing the truck. After observing Earvin for twenty to thirty seconds, Pak initiated a traffic stop for a "left lane for passing only" violation.

Once Earvin pulled over to the eastbound shoulder of I-10, Pak approached the passenger side of the vehicle. At that time, Pak saw a young female passenger, C.F., sitting in the front seat sucking her thumb and avoiding eye contact. Pak asked Earvin to exit the vehicle and informed him that he would be issued a warning. When Earvin appeared visually nervous, Pak questioned him about C.F. and their destination. Earvin told Pak he was taking C.F. to her mother in Beaumont.

2

Trooper Pak ran Earvin's license and discovered that Earvin was a registered sex offender residing in Crosby, Texas. He then asked Earvin about his association with C.F. Earvin replied that he was dating C.F.'s mother. Pak asked C.F. to join him in the patrol car, where they unsuccessfully tried to contact her mother. During their conversation, Pak learned that C.F.'s version of events differed from Earvin's version.

Concerned about Earvin's and C.F.'s conflicting stories, Pak contacted Brandon Bess, a local agent of the Texas Department of Public Safety's Criminal Investigations Division. Bess advised Pak to proceed with an investigation. Pursuant to Bess's suggestion, Pak asked Earvin to follow him to the station. Earvin complied with that request. Another officer who had arrived during Pak's investigation followed Earvin. C.F. rode to the station in Pak's patrol car. When the three-car caravan arrived at the station, C.F. was released to Bess for further questioning. Bess then interviewed C.F. She stated that Earvin had taken her to a motel in Channelview where he took sexually explicit photographs of her, used food and new clothes to barter for oral sex, and applied lotion to her legs while rubbing her vagina. C.F. had denied Earvin's request for vaginal sex. C.F. also informed Agent Bess that similar trips to the Baytown–Channelview area had occurred on two prior occasions. C.F. showed Bess the explicit photographs, which were stored on her mobile phone. Earvin had sent the photographs to C.F. by text message. Bess was able to identify Earvin in one of these photographs.

On August 9, 2012, the State indicted Earvin on three felony offenses: sexual assault of a child, indecency with a child by touching, and promotion of child pornography. The indictments alleged two prior convictions: one for possession of a controlled substance and another for indecency with a child by contact.

Earvin filed a pretrial motion to suppress. On December 9, 2013, the trial court held a hearing on Earvin's motion to suppress. At the hearing, the parties presented evidence and argument on whether the traffic stop was justified, whether the investigation exceeded the scope of the stop, and whether Earvin was under arrest at the point he was asked to follow Pak to the station. The court determined that the traffic stop was justified by reasonable suspicion. The court found, however, that the seizure rose to the level of an arrest when Pak asked Earvin to follow him to the station. The court then suppressed all evidence gathered after Pak's request, but denied the motion with respect to evidence obtained prior to Pak's request.

On August 27, 2014, pursuant to a plea agreement, Earvin pleaded guilty to indecency with a child by contact and sexual assault of a child under age 17. In return, the State dismissed its promotion of child pornography charge and abandoned the second enhancement paragraph in the two remaining indictments. The court assessed punishment on each charge at sixteen years' imprisonment, with the sentences to run concurrently, in accordance with the plea agreement. Earvin retained the right to appeal the trial court's ruling on his motion to suppress. Earvin did not file a motion for new trial. On the day of his plea, Earvin filed a signed notice of appeal explicitly pertaining to his motion to suppress.

*Earvin*, 2015 WL 4104701, at 1–2.

## The Applicable Legal Standards

### Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts

the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner claims that he pleaded guilty based on counsel's misrepresentation that the prosecution could use suppressed evidence against him. In the alternative, he appears to argue that counsel never informed him that the evidence against him had been suppressed. He contends that, had counsel correctly advised him, he would not have pleaded guilty.

In responding to petitioner's claim on state habeas review, trial counsel submitted the following affidavit testimony:

> On August 14, 2012, I was appointed to represent Mr. Patrick Dale Earvin in the 177th District Court on three separate cases, an Indecency with a Child, Sexual Assault of a Child, and Promotion of Prostitution [*sic*]. Mr. Earvin was indicted as a habitual offender for all three case[s], which carried either a minimum of twenty-five years in prison on the Promotion of Prostitution [*sic*] case or an automatic life sentence if convicted in the Sexual Assault or Indecency cases and the enhancements were found true.
>
> I believed the original traffic stop of Mr. Earvin, and any subsequent search of him, was illegal. I set the case for trial with a Motion to Suppress to be heard at trail [*sic*]. On December 6, 2013, Judge Patrick heard my Motion after picking the jury, but prior to their being sworn.

At the Motion, Judge Patrick found that the traffic stop of Mr. Earvin was lawful, but that any evidence obtained *from Mr. Earvin*, after Mr. Earvin was told to follow him back to the station, would be suppressed. The State then asked for a continuance and the case was reset. Mr. Earvin was present for the Motion, testified in the Motion, and I was able to talk to him and explain the Judge's ruling after the Motion in the holdover.

In Mr. Earvin's car that day was the complainant, a sixteen year old female. That female told officers incriminating information about Mr. Earvin and had a cell phone with incriminating evidence. Nothing about her testimony or phone could be, or was, suppressed in the Motion. Therefore, the State was ready to move forward in trying Mr. Earvin. The case was set for trial on August 27, 2014.

Regarding Mr. Earvin's understanding of what was suppressed and what wasn't suppressed by Judge Patrick; I am certain Mr. Earvin understood the situation and that is why he plead guilty on our second trial setting. The bottom line was, although we won suppressing any evidence obtained from *HIM*, it was a tiny win in the larger scheme of things. The State's cases that he plead to were based on the statements and ultimately the testimony of the complainant. She could testify to all the elements of the State's cases (that he plead to) without the State needing any other evidence. They realized that after the Motion's reset and were more than ready to try Mr. Marvin [*sic*] to a jury based on the evidence not suppressed. Mr. Earvin and I discussed this several times prior to his plea. We discussed it at our December 18, 2013 court setting, and I explained it again in a letter I sent to him on July 1, 2014 (attached to this affidavit), and we discussed it again at a jail visit I had with him on August 26, 2014, the day before our second trial setting.

Mr. Earvin's plea was absolutely voluntary. He understood that the complainant's testimony was enough to convict him by a jury and that a conviction in any of the cases the Defendant was indicted on carried many more years than the sixteen years being offered by the State. He understood he had a right to trial and to make the State prove the cases against him and he chose to plead guilty. Along with his plea, he insisted he would not waive his right to appeal the Motion to Suppress (as is evidenced in the plea papers). He understood the Judge ruled for him regarding the time of his arrest, but against him on the stop. His insistence on not waiving his right to appeal shows he understood the rulings.

*Ex parte Earvin*, pp. 75–77 (original emphasis).

In rejecting petitioner's challenges to his guilty plea and counsel's effectiveness, the state trial court made the following relevant findings of fact on collateral review:

5.     [T]he applicant claims that his plea was involuntary and that he received the ineffective assistance of counsel because he was never informed that the trial court had suppressed incriminating evidence against the applicant. The applicant claims that had he known about the suppressed evidence, he would not have pleaded guilty.

6.     The trial court finds, based on the credible affidavit of [trial counsel] that [she] set the applicant's case for trial with a motion to suppress to be carried with trial because she believed the original traffic stop and subsequent search of the applicant was illegal. Judge Ryan Patrick heard the motion to suppress after the jury was selected but before the jury was sworn, and held that the traffic stop of the applicant was lawful but that any evidence obtained from the applicant after the applicant was told by a police officer to follow him to the station would be suppressed.

7.     The trial court finds, based on the reporter's record and the credible affidavit of [trial counsel], that the applicant was present and testified during the motion to suppress hearing.

8.     The trial court finds, based on the reporter's record, that the trial court made findings on the record at the conclusion of the hearing. The trial court found that the traffic stop of the defendant's vehicle was lawful, but that any evidence obtained after Trooper Pak gave the defendant an instruction to follow him back to the police station would be suppressed.

9.     The trial court finds, based on the credible affidavit of [trial counsel], that [she] discussed the results of the hearing with the applicant. [Trial counsel] told the applicant that any incriminating evidence obtained after the applicant was instructed to follow the police officer to the station had been suppressed, but that the State could and would still prosecute the applicant using the complainant's testimony and the complainant's phone. [Trial counsel] discussed this with the applicant several times prior to his plea of guilty, and also explained this in writing to the applicant in a letter dated July 1, 2014.

10. The trial court finds, based on the credible affidavit of [trial counsel], that the applicant understood that the complainant's testimony was enough to convict him, and that a conviction in any of his pending cases carried more than the sixteen-year sentence offered by the State. The applicant understood that he had a right to a jury trial and that he could require the State to prove his guilt, but the applicant decided to voluntarily plead guilty.

11. The applicant signed the plea agreement and the trial court's admonishments.

12. The trial court properly admonished the applicant as to the charge against him, the range of punishment, and the consequences of his plea in accordance with Article 26.13 of the Code of Criminal Procedure as reflected in the trial court's written admonishments.

13. The trial court finds the applicant's plea was freely and voluntarily entered.

14. The trial court finds that as consideration for the applicant's plea of guilty in the instant case and in the sexual assault of a child case, the State dismissed the applicant's promotion of child pornography case and also abandoned the second enhancement paragraph of each indictment, *i.e.*, the prior conviction for indecency with a child by contact, which reduced the minimum range of punishment to five years' confinement in each of the remaining cases.

15. The trial court finds that the applicant fails to show that, but for these alleged errors committed by [trial counsel], he would not have pleaded guilty but would have insisted on going to trial on the instant case, with two other felony cases pending.

*Ex parte Earvin*, pp. 84–87 (record citations omitted). The trial court also made the following relevant conclusions of law:

1. The applicant fails to show that trial counsel's conduct fell below an objective standard of reasonableness; that but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

2. The applicant fails to show that but for trial counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.

3. The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel.

4. The trial court properly admonished the applicant, therefore, a presumption arises that the applicant's guilty plea was voluntarily entered.

5. In a habeas corpus proceeding, there is a presumption of regularity concerning guilty pleas which the applicant fails to overcome. Since the applicant fails to overcome the presumption of regularity created in the trial court records, the applicant fails to show that his plea was involuntary.

6. In all things, the applicant has failed to demonstrate that he was denied the effective assistance of counsel.

*Id.*, pp. 87–88 (citations omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

A federal court will uphold a guilty plea challenged in a habeas proceeding if the plea was knowing, voluntary, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). A voluntary plea waives all non-jurisdictional defects including claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Consequently, petitioner here must prove that counsel's performance was deficient and that it resulted in an involuntary plea.

Petitioner fails to meet his burden of poof. Although petitioner argues that counsel should have advised him not to plead guilty because the evidence necessary to convict him had been suppressed and could not be used, petitioner is factually mistaken. As shown by counsel's affidavit testimony and as reflected in the trial court's findings, the motion to suppress was only partially granted. The trial court did not suppress complainant's own testimony or the photographic evidence from her cell phone. The trial court found that counsel advised petitioner on at least three occasions prior to the plea hearing that this remaining inculpatory evidence was sufficient to convict him. Petitioner presents no probative summary judgment evidence supporting his claims of misrepresentation and deficient performance, and none appears in the record. The record does not show that petitioner pleaded guilty based on any misrepresentations of the evidence by trial counsel.

The state court on collateral review rejected petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

### *Fourth Amendment Claim*

Petitioner argues that police officers violated his Fourth Amendment rights by illegally detaining him and searching his car and phone without probable cause. Under *Stone v. Powell*, 428 U.S. 465, 494 (1976), petitioner's Fourth Amendment claim is not

cognizable on federal habeas review because petitioner had the opportunity to raise them at trial and on appeal.

Petitioner's Fourth Amendment claim is foreclosed by *Stone*, and respondent is entitled to summary judgment dismissal of the claim.

### *Conclusion*

The motion for summary judgment (Docket Entry No. 21) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas on December 4, 2018.

_____
Gray H. Miller
United States District Judge